## STATE v. CLAUDE L. BROWN.

153 N. W. (2d) 229.

September 29, 1967—No. 40,412.

*C. Paul Jones,* State Public Defender, and *Murray L. Galinson,* Assistant State Public Defender, for appellant.

*Douglas M. Head,* Attorney General, *Gerard Snell,* Solicitor General, and *Carl E. Erickson,* County Attorney, for respondent.

OTIS, JUSTICE.

Defendant was tried and found guilty of attempting sexual intercourse with an inmate of a state hospital who, by reason of her mental deficiency, was incapable of giving consent.[1] He was sentenced to a term of imprisonment not to exceed 7 years and appeals from the conviction.

At the time of trial defendant stipulated that the victim was not mentally competent to testify,[2] but did not concede that she was incapable of giving consent. On the contrary, defendant took the position that she had been the aggressor and he had merely acquiesced in her overtures. In this posture of the case the trial court deemed it advisable to put the victim on the stand and, in the presence of the jury, interrogate her, both to establish her competence or incompetence to testify and to permit

---

[1] Minn. St. 617.01 provides as follows: "Rape is an act of sexual intercourse with a female not the wife of the perpetrator, committed against her will or without her consent; every person who shall perpetrate such an act of sexual intercourse with a female of ten years or upwards, not his wife:

"(1) When, through idiocy, imbecility, or any unsoundness of mind, either temporary or permanent she is incapable of giving consent;

\* \* \* \* \*

"Shall be punished by imprisonment in the state prison for not less than seven, nor more than 30, years."

[2] § 595.02(6).

the jury to decide whether she had sufficient understanding to give consent. Defendant assigns as error the procedure adopted by the court, asserting that because of her unfortunate demeanor the victim's appearance on the stand excited sympathy in the jury which was highly prejudicial to the defendant.

The victim was a woman 59 years of age who had been confined in a state hospital for the mentally deficient since she was 12 years of age. She had an IQ of 25, which is on the borderline between an idiot and an imbecile. Her mental age was 4½ years. Her memory was extremely limited and precluded at the trial a coherent recitation of the events which occurred on the day of the offense.

■ Under our decisions the court was correct in conducting a preliminary examination to decide as a matter of law whether the victim was capable of testifying. State v. Prokosch, 152 Minn. 86, 187 N. W. 971; State v. Kahner, 217 Minn. 574, 580, 15 N. W. (2d) 105, 108, certiorari denied, 323 U. S. 768, 65 S. Ct. 121, 89 L. ed. 614; State ex rel. Dugal v. Tahash, 278 Minn. 175, 153 N. W. (2d) 232. Ordinarily it is better practice to conduct the inquiry outside of the hearing of the jury. Here, however, the state was obliged to prove as a part of its case the victim's legal inability to consent to sexual intercourse. It was therefore pertinent to examine her in the presence of the jury to establish whether or not her mental deficiency deprived her of capacity to give consent. We hold that under these circumstances the court did not abuse its discretion in conducting the inquiry in the presence of the jury, notwithstanding the fact that the jury may have been moved by the unfortunate appearance and mental condition she displayed.

■ The second issue raised by defendant is the sufficiency of the evidence to sustain a conviction for attempted rape. There was evidence from which the jury could find that at about 8:30 a.m. on September 1, 1965, defendant was seen on the grounds of the State Hospital at Brainerd. Shortly thereafter it was discovered that the victim was missing from the institution, and two employees searched the grounds for her. They observed defendant's automobile on an abandoned road. One of them went back to the hospital to summon another employee. When they returned they discovered defendant standing alongside his

car and the victim lying on the seat with her clothes disarrayed, crying, and complaining that the defendant had slapped her. A physical examination disclosed that her organs had been irritated in a manner consistent with sexual penetration. The defendant signed a statement admitting he had picked up the defendant on the roadway, that she had invited him to have intercourse and he had intended to do so but was frustrated by the appearance of the hospital employees. On this state of the record, defendant asserts as a matter of law that no attempt occurred.

While we agree that the evidence is more consistent with a finding of rape than attempted rape, it was the prerogative of the jury to bring in a verdict convicting defendant of the lesser included offense. In State v. Johnson, 243 Minn. 296, 300, 67 N. W. (2d) 639, 642, we held that an attempt begins with the initial attack on a female, not necessarily involving a battery or an act of penetration:

"* * * All that is required in this regard is some overt act in furtherance of the intent beyond mere preparation. Clearly the assault and battery committed by defendant in this case constituted the required overt act for an attempt, * * *."

Although the victim was incompetent to testify, that fact did not preclude evidence that she complained to several hospital employees at the scene. The accusations which she there made were admissible as a part of the res gestae. These remarks, together with the position and condition in which the victim was found by the hospital employees, were sufficient to sustain a verdict of attempted rape. The conviction is therefore affirmed.

Affirmed.